# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ALICE DANIELS,** on behalf of herself and others similarly situated, | : : | **CASE NO. 2:20-cv-5859** |
| Plaintiff, | : : : | **JUDGE MICHAEL H. WATSON** |
| v. | : : | **MAGISTRATE JUDGE ELIZABETH A. PRESTON DEAVERS** |
| **OHIO STATE UNIVERSITY PHYSICIANS, INC.,** | : : : | **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND BRIEF IN** |
| Defendant. | : | **SUPPORT** |

Representative Plaintiff Alice Daniels ("Representative Plaintiff") and Defendant Ohio State University Physicians, Inc. ("Defendant" or "OSUP") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations with the assistance of a private mediator.

The following documents are submitted for the Court's approval:

Exhibit 1: Collective Action Settlement Agreement and Release (the "Agreement")[1], with the following Exhibits:

    Exhibit A: Claim Form and Release;

    Exhibit B: Notice of Settlement of Collective Action Lawsuit.

Exhibit 2: Declaration of Matthew J.P. Coffman; and

Exhibit 3: Proposed Stipulated Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal With Prejudice.

---

[1] Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Collective Action Settlement Agreement and Release.

## MEMORANDUM IN SUPPORT

**I.     FACTUAL AND PROCEDURAL BACKGROUND.**

  A. Summary of the Claims and Procedural History.

On November 11, 2020, Representative Plaintiff filed this case (the "Lawsuit" or the "Action") against OSUP on behalf of herself and other similarly situated current and former healthcare employees. (Coffman Decl. ¶ 9; ECF No. 1).

In the Action, Representative Plaintiff alleged that OSUP failed to pay healthcare employees overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, § 201 *et seq.* ("FLSA"). Specifically, Representative Plaintiff alleged that OSUP violated the FLSA by failing to pay healthcare employees for certain pre-shift work and deducted meal breaks from their daily, compensable hours worked when their meal breaks were either not taken, shortened, or interrupted with job duties. (Coffman Decl. ¶ 10; ECF No. 1 at ¶¶ 26-38). OSUP denies these allegations and asserts that it properly paid its healthcare employees, including Representative Plaintiff, for all hours worked.

On February 8, 2021, the Parties filed a Joint Motion to Stay the Case because they agreed to mediate this dispute with a private mediator within 120 days. (ECF No. 18). The Court granted the Parties' Motion to Stay the Case and ordered that they file a joint status report on or before June 9, 2021 or within seven (7) days of mediation, whichever occurred first. (ECF No. 19).

The Parties mediated this case with Michael N. Ungar on May 17, 2021. Prior to the mediation, OSUP provided time and compensation records for Representative Plaintiff and other healthcare employees that Representative Plaintiff contends are similarly situated. Plaintiffs' Counsel, with the assistance of its consultant, a Ph.D. level economist, performed a damages analysis using this information. After several hours, the Parties left the mediation at an impasse. (Coffman Decl. ¶ 11-13). The Parties, with the assistance of the mediator, continued settlement

discussions after the mediation and filed a Joint Status Report on June 16, 2021, requesting that the Court provide them additional time to determine if a resolution could be reached between the Parties. (ECF No. 21). The Parties ultimately reached a tentative settlement on June 24, 2021 and filed a Notice of Tentative Settlement indicating the same. (ECF No. 22).

In addition to the Representative Plaintiff, the following individuals have joined the case to date: Tiffany Malizia, Julie Henderson,[2] Kewonna Roberts, Kimberly Mosley,[3] Swantosha Spaulding,[4] Meghann Tinker,[5] Rachel Lawson,[6] Bambi Sanborn,[7] and Evelyn Cleveland[8] (collectively "Opt-In Plaintiffs").

        C.       <u>Summary of the Key Settlement Terms</u>.

The total settlement amount is $240,000.00. This amount includes: (a) all individual settlement payments to 360 Eligible Settlement Participants[9] which includes Representative Plaintiff and all Opt-In Plaintiffs; (b) a service award of $5,000 to Representative Plaintiff for her services in bringing and prosecuting this Action and service awards of $500 for certain Opt-In Plaintiffs (for which they will provide Defendant a global release of any potential claims); (c) Plaintiffs' Counsel's attorney fees and litigation expenses; (d) Plaintiffs' share of the mediator's bill; and (e) the cost of settlement administration. (Coffman Decl. ¶ 16).

A Notice of Settlement and Claim Form (attached to the Agreement) will be sent to the

---

[2] Both Malizia and Henderson are filed at ECF No. 1-2.
[3] Both Roberts and Mosley are filed at ECF No. 4-1.
[4] ECF No. 5-1.
[5] ECF No. 7-1.
[6] ECF No. 8-1.
[7] ECF No. 10-1.
[8] ECF No. 13-1.
[9] Eligible Settlement Participants will receive a settlement payment if they submit a timely Claim Form as outlined in the Collective Action Settlement Agreement and Release. Representative Plaintiff and all Opt-In Plaintiffs are not required to submit a Claim Form to receive their payments.

Eligible Settlement Participants. Eligible Settlement Participants who timely return their Claim Form will become Claimants,[10] and Claimants will receive a settlement payment. Only those Eligible Settlement Participants that join the settlement will be bound by the Agreement. Those that do not retain the right to pursue their own claims. (Coffman Decl. ¶ 20).

Total damages for the collective were calculated by adding 30 minutes of unpaid time to each Eligible Settlement Participants' workweek. Thus, total unpaid overtime for the collective was determined to be $171,983.55 for a three-year period. This amount of time was settled upon as reasonable as a result of information learned during the mediation, settlement discussions, and the informal discovery process. Each Eligible Settlement Participant that elects to participate in the settlement will receive approximately 82% of their calculated damages for a three-year statute of limitations.[11] This type of allocation is commonly used in class and collective action settlements. (Coffman Decl. ¶ 21). This recovery is not just fair and reasonable, it is exceptional. *See*, *Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, 833 Fed.Appx. 430, 431, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class).

In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this Lawsuit will be dismissed with prejudice, and the Claimants (including the Representative Plaintiff and Opt-In Plaintiffs) will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit. (Coffman Decl. ¶ 23).

---

[10] Representative Plaintiff and Opt-In Plaintiffs are Claimants and are not required to submit a Claim Form.
[11] Any Eligible Settlement Participant who did not have at least $10 in damages will receive a minimum payment of $10.

## II. PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499 at *3.

The settlement in this Action satisfies each of these elements.

        1.     *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).  The Agreement was achieved only after arm's-length and good faith negotiations between the Parties, with the assistance of a neutral mediator.  (Coffman Decl. ¶ 23).  As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

        2.     *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval*.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this Action had not settled, the Parties would be required to engage in costly litigation, such as briefing on conditional certification, formal written discovery, depositions, dispositive motions, trial, and potential appeals.  The Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Coffman Decl. ¶ 30).

        3.     *Investigation Was Sufficient to Allow the Parties to Act Intelligently*.

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendant produced all necessary payroll and timekeeping information

for the Eligible Settlement Participants.  Plaintiffs' Counsel engaged the services of an economist to build a damages model which was instrumental in guiding the Parties' negotiations. (Coffman Decl. ¶ 11-12).

In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

    4.  *The Risks of Litigation Favor Approval*.

The settlement represents a compromise of disputed claims.  Specifically, Representative Plaintiff allege that they and other healthcare employees were not compensated for all pre-shift work and unpaid meal breaks that were either not taken, shortened, or interrupted by job duties. On the other hand, Defendant denies these allegations and asserts that it has fully compensated its healthcare employees for all time worked.  (Coffman Decl. ¶ 10, 26).

The Parties also disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, whether liquidated damages are appropriate, and whether the claims alleged can proceed collectively. (Coffman Decl. ¶ 26).

Accordingly, if this Action had not settled, it is possible that there would be no recovery for the Eligible Settlement Participants at all.

    5.  *The Opinion of Plaintiffs' Counsel Favor Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions.  At all times, they have acted in good faith and have vigorously represented the interests of the Eligible Settlement Participants, which include Representative Plaintiff and Opt-In Plaintiffs. Importantly, Plaintiffs' Counsel opined that the settlement is fair, reasonable, adequate, and in the best interests of Representative Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants (Coffman Decl.

¶ 15, 26). "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the settlement.

      6.  *The Reaction of Absent Class Members*.

If the Court approves the settlement, the Eligible Settlement Participants will receive a Notice of Settlement and Claim Form. They will be given the option to join the settlement. Only those Eligible Settlement Participants that join the settlement will be bound by the Agreement. Those that do not join the settlement will retain the right to pursue their own claims. (Coffman Decl. ¶ 20).

      7.  *The Public Interest*.

"Public policy generally favors settlement of class action lawsuits." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *13 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F. Supp.2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Eligible Settlement Participants, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

  B.  <u>The Settlement Distributions Are Fair, Reasonable and Adequate</u>.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

      1.  *The Individual Payments are Reasonable and Adequate*.

As part of their pre-mediation evaluation, Plaintiffs' Counsel retained an economist to analyze the class data provided by Defendant's counsel. Damages were calculated by adding thirty

(30) minutes to every workweek by every Eligible Settlement Participant. This amount of time was settled upon as reasonable based on the information learned during mediation, settlement discussions, and informal discovery.

The Gross Settlement Fund equals approximately 140% of three years of unpaid wages, and the Net Settlement Fund equals approximately 82% of calculated unpaid overtime for a three-year period. (Coffman Decl. ¶ 22). This recovery is not just fair and reasonable, it is exceptional. *See*, *Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 19-2260, 2021 U.S. App. LEXIS 983, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class).

All individual payments will be calculated proportionally. (Coffman Decl. ¶ 21). As such, each Eligible Settlement Participant will have the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant and the amount of hours he or she worked each week within the period of time covered by the settlement.

        2. *Representative Plaintiff's and Opt-In Plaintiffs' Service Awards are Proper and Reasonable.*

The Agreement provides for a service award of $5,000 to Representative Plaintiff and service awards of $500 to certain Opt-In Plaintiffs, in addition to their individual payments. (Coffman Decl. ¶ 17). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). *See also*, *Shane Group, Inc.*, 2021 U.S. App. LEXIS 983 at *3. Service awards are meant to "compensate named

plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *7 (N.D. Ohio Mar. 8, 2010)).

Here, the Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. Moreover, the Opt-In Plaintiffs also contributed to Plaintiffs' Counsel's efforts to resolve this dispute. In addition, both the Representative Plaintiff and the Opt-In Plaintiffs have agreed to execute a global release of all of their claims against Defendant in exchange for their service payments. (Coffman Decl. ¶ 17).

   3. *The Attorney Fees to Plaintiffs' Counsel Are Proper and Reasonable.*

After the Court has confirmed that the terms of settlement are fair to the Eligible Settlement Participants, it may review the Agreement as to the provision of fees and litigation expenses to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of the total settlement amount, or $80,000. A one-third fee award is "typical for

attorney's fees in common fund, FLSA collective actions in this District…" *Hebert v. Chesapeake Operating, Inc.*, Case No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792 at *8 (S.D. Ohio Sept. 20, 2019) (J. Morrison). This "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)); *see, also, Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, *15 (S.D. Ohio Dec. 3, 2019) (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, *16 (N.D. Ohio Mar. 26, 2019) (same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, *21 (S.D. Ohio Aug. 17, 2018) (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, *22 (N.D. Ohio June 15, 2010) (same).

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019).

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *10 (S.D. Ohio Nov. 25, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and

law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

        4.        *The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case.*

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which as of the date of this Joint Motion are $2,664.50.

"Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

## III.    CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payments to Representative Plaintiff and the Opt-In Plaintiffs; (4)

approve the payment to the mediator and Settlement Administrator; and (5) retain jurisdiction to enforce the settlement if necessary.

Respectfully submitted,

| **COFFMAN LEGAL, LLC** | **TAFT STETTINIUS & HOLLISTER, LLP** |
|---|---|
| */s/ Matthew J.P. Coffman* | */s/ Carolyn A. Davis* |
| Matthew J.P. Coffman (0085586) | Carolyn A. Davis (0084905) |
| Adam C. Gedling (0085256) | Jonathan N. Olivito (0092169) |
| Kelsie N. Hendren (1000041) | 65 East State Street |
| 1550 Old Henderson Road | Suite 1000 |
| Suite 126 | Columbus, Ohio 43215 |
| Columbus, Ohio 43220 | Telephone: (614) 221-2838 |
| Phone: 614-949-1181 | Facsimile: (614) 221-2007 |
| Fax: 614-386-9964 | Email: cdavis@taftlaw.com |
| Email: mcoffman@mcoffmanlegal.com | jolivito@taftlaw.com |
| agedling@mcoffmanlegal.com | |
| khendren@mcoffmanlegal.com | *Attorneys for Defendant Ohio State University Physicians, Inc.* |
| *Attorneys for Named Plaintiff and those similarly situated* | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July 2021, a true and accurate copy of the forgoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Matthew J.P. Coffman*
Matthew J.P. Coffman