# EXHIBIT 1

## COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to Court approval, Ohio State University Physicians, Inc. ("Defendant") and Alice Daniels ("Daniels" or "Representative Plaintiff") individually, and on behalf of the Eligible Settlement Participants (defined below), voluntarily enter into this Collective Action Settlement Agreement and Release (this "Agreement") to settle all claims and issues as set forth more fully below. Representative Plaintiff and Defendant will be collectively referred to as the "Parties".

## BACKGROUND AND RECITALS

1. Representative Plaintiff filed *Daniels v Ohio State University Physicians, Inc.*, S.D. OH Case No. 2:20-cv-5859 on November 11, 2020 (the "Action"). In the Action, Representative Plaintiff asserted claims against Defendant on behalf of herself and others similarly situated under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*, and the Ohio Prompt Pay Act, O.R.C. § 4113.15.

2. Defendant filed an Answer and denied, and continues to deny, the allegations asserted in the Action.

3. To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in mediation.

4. Class Counsel engaged the services of an expert to construct a damages model using the time and pay information produced by Defendant.

5. As of the date of this Agreement, in addition to Representative Plaintiff, nine (9) Opt-In Plaintiffs have joined this case.

6.      The Parties mediated this case with Michael N. Ungar on May 17, 2021. Although the Parties mediated their dispute for several hours, the Parties left the mediation at impasse.

7.      The Parties continued negotiations over the following weeks until a resolution was reached on June 29, 2021. The terms of the Parties' agreement are embodied herein.

8.      The purpose of this Agreement is to fully and finally settle all Released Claims (as defined below) that Representative Plaintiff and any Claimants (as defined below) may have against Defendant.

## DEFINITIONS

9.      "Approval Order" means the Court's Order approving this Settlement.

10.     "Claimant" means Representative Plaintiff, Opt-In Plaintiffs, and each Eligible Settlement Participant who completes, signs, and submits a valid and timely Claim Form. Representative Plaintiff and the Opt-In Plaintiffs are not required to submit a Claim Form to receive their Settlement Award or any other payment under this Agreement.

11.     "Claim Form" means the form approved by the Parties' Counsel, and subject to Court approval, that each Eligible Settlement Participant, except for Representative Plaintiff and Opt-In Plaintiffs, must sign, complete in full, and timely submit within sixty (60) days following mailing of the Notice of Settlement to recover a Settlement Award. A copy of the Claim Form is attached as **Exhibit A.**

12.     "Court" means the United States District Court for the Southern District of Ohio, Eastern Division.

13.     "Covered Period" refers to the period from November 11, 2020 until June 29, 2021.

14. "Defendant's Counsel" means Carolyn A. Davis and Jonathan N. Olivito of Taft Stettinius & Hollister, LLP.

15. "Effective Date" means the first day after the date on which the Court approves this Settlement.

16. "Eligible Settlement Participants" means "All former and current individuals employed by OSU Physicians, Inc. as hourly, non-exempt Medical Assistants ("MAs"), Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs") or Patient Services Associates ("PSAs") in the Internal Medicine Float Pool or the Infectious Disease, Endocrinology, Medical Specialty, Dermatology, Rheumatology/Nephrology, or General Internal Medicine Clinics operated by OSU Physicians, Inc. and scheduled to work 40 or more hours in any workweek between November 11, 2017 and November 11, 2020." Eligible Settlement Participants are a group of approximately 360 individuals. Eligible Settlement Participants include the Representative Plaintiff and the Opt-In Plaintiffs.

17. "Global Settlement Fund" means the gross settlement amount of $240,000.00. The Global Settlement Fund is the sole and maximum payment by Defendant for the claims asserted in this Action and includes (1) all Settlement Awards (defined below); (2) any Service Awards approved for Representative Plaintiff and certain Opt-In Plaintiffs; (3) all Class Counsel's attorneys' fees and costs; (4) Plaintiffs' share of the mediator's bill; and (5) the Settlement Administrator's costs. In addition, Defendant will make all required employer contributions with respect to any portions of the Settlement Awards treated as wages under Internal Revenue Service ("IRS") Form W-2, and these contributions will not be deducted from the Global Settlement Fund except as provided in Paragraph 43.

18. "Net Settlement Fund" means the amount available for individual Settlement Awards, after deducting all attorneys' fees, costs, expenses, the Service Awards, Plaintiffs' share of the mediator's bill, and the Settlement Administrator's costs.

19. "Notice of Settlement" means the form approved by the Parties' Counsel, and subject to Court approval, that will be sent to each Eligible Settlement Participant which will explain this Settlement and the claims process and provide each Eligible Settlement Participant with the amount of his or her Settlement Award. A copy of the Notice of Settlement is attached as **Exhibit B.**

20. "Opt-In Plaintiffs" means the individuals who, as of the date of this Agreement, have submitted a Consent to Join form, which was been filed with the Court.

21. "Class Counsel" means Matthew J.P. Coffman, Adam C. Gedling, and Kelsie N. Hendren of Coffman Legal, LLC.

22. "Released Claims" means, upon the Effective Date, the Claimants will release, and forever discharge, Released Parties from any and all claims that are, or were, in any way, related to the factual allegations in the Action, including but not limited to claims, rights, demands, liabilities, causes of action, expenses, and losses of every nature and description, including any claims for wages, damages, liquidated damages, punitive damages, attorneys' fees, costs, expenses, penalties, interest, costs of settlement administration, and Service Awards, whether known or unknown, asserted or un-asserted, pursuant to statute, ordinance, regulation, common law, equity, or otherwise, arising on, or before, the date of the execution of this Agreement, that were, or could have been, asserted under the FLSA, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), the Ohio Prompt Pay Act ("OPPA"), Article II, Section 34a of the Ohio

Constitution, or any other applicable federal, state, or local wage and hour laws relating to unpaid and/or untimely payment of compensation or overtime compensation and/or any other applicable federal, state, or local laws relating to retaliation for bringing, opting into, or otherwise participating in the Action.

23.     "Released Parties" means Defendant and any of its present and former owners, partners, agents, attorneys, officers, directors, shareholders, employees, representatives, insurers, benefit plans, plan fiduciaries and/or administrators, corporate parents, corporate siblings, divisions, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities and any other persons acting by, through, under, or in concert with, any of these persons or entities, and their successors, including any part that was or could have been named as a defendant in the Action.

24.     "Settlement" means the Parties' resolution of the Action as to Claimants.

25.     "Settlement Administrator" means Analytics Consulting, LLC.

26.     "Settlement Administrator Costs" means an amount not exceeding $6,924 for settlement administration fees, expenses, and costs incurred by the Settlement Administrator directly or indirectly related to its duties under this Agreement, including but not limited to all fees, expenses, and costs in connection with the Global Settlement Fund and Net Settlement Fund, and those duties related to notice, check cutting and mailing, reports to counsel, court filings, legal and accounting advice relating to the establishment of the Net Settlement Fund and tax treatment and reporting of awards to Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), and any other related duties.

27.     "Settlement Award" means the amount of the Net Settlement Fund calculated under Paragraph 46 of this Agreement by Class Counsel that will be paid to each Eligible Settlement Participant who becomes a Claimant.

28.     "Service Awards" means the payments made from the Global Settlement Fund to Representative Plaintiff and certain Opt-In Plaintiffs for their services in bringing and prosecuting the Action, and in consideration for Representative Plaintiff's and Opt-In Plaintiffs' Released Claims as defined below.

## DENIAL OF LIABILITY

29.     Defendant denies liability or wrongdoing of any kind associated with the claims and actions alleged in the Action. Consequently, this Agreement is a compromise, and shall not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendant or the Released Parties, for any purpose, and under any circumstance. This Agreement, as well as the negotiations that occurred in connection with its creation, shall not constitute evidence with respect to any issue, or dispute, in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement. The Parties do not concede any claims or defenses that were, or could have been, raised in the Action; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

## CERTIFICATION OF THE COLLECTIVE

30.     For purposes of this Settlement only, the Parties agree that Representative Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA and agree to conditional certification of the class of Eligible Settlement Participants.

## DUTIES OF THE PARTIES TO COOPERATE TO OBTAIN COURT APPROVAL OF THE SETTLEMENT

31. The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts ordered by the Court, to accomplish the terms of this Settlement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to obtain approval of this Settlement without material modifications and to implement its terms.

### SETTLEMENT ADMINISTRATOR'S DUTIES AND RESPONSIBILITIES

32. The Parties agree to retain a Settlement Administrator responsible for:

a. Establishing a Global Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*;

b. Issuing all funds from the Global Settlement Fund;

c. Determining and finalizing the tax withholding amounts and employer payroll tax amounts for Claimants, as applicable;

d. Preparing, printing, and disseminating the Notice of Settlement to all Eligible Settlement Participants;

e. Promptly apprising Class Counsel and Defendant's Counsel of the activities of the Settlement Administrator, timely responding to inquiries of the Parties or their counsel, and copying the Class counsel and Defendant's Counsel on material correspondence;

f. Mailing Settlement Award checks (or other negotiable instrument) to all Claimants;

g.     Wiring Class Counsel's attorneys' fees and costs;

h.     Mailing the mediator's payment;

i.     Mailing the Service Awards to Representative Plaintiff and the Opt-In Plaintiffs;

j.     Reissuing and remailing Settlement checks to Claimants who do not receive their Settlement Award checks;

k.     Remitting to the appropriate governmental entities all employer payroll taxes owed in connection with all payments to each Claimant;

l.     Issuing IRS Forms W-2, 1099, and W-9 (if required) for all payments to each Claimant;

m.     Ascertaining current addresses and addressees' information for each Notice of Settlement and Settlement Award check returned as undeliverable;

n.     Referring to Class Counsel all inquiries by Eligible Settlement Participants the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified in this Agreement;

o.     Promptly notifying the Parties' Counsel of any material requests or communications made by any Eligible Settlement Participant who receives the Notice of Settlement;

p.     Maintaining adequate records of its activities, including the date of the mailing of the Notices of Settlement, receipt of returned mail, and other communications and attempted communications with Eligible Settlement

Participants, and providing the Parties' Counsel with weekly reports regarding the same;

q.      Confirming, in writing to the Parties' Counsel its completion of the administration of this Settlement and retaining copies of all endorsed Settlement checks; and

r.      Such other tasks as customarily and regularly performed by a settlement administrator and as the Parties mutually agree.

33.     Settlement Administrator Costs shall be paid out of the Global Settlement Fund.

## SETTLEMENT ADMINISTRATION TIMELINES

34.     Within **seven (7) days** of the Effective Date, the Settlement Administrator shall open an interest-bearing bank account, which will hold the Global Settlement Fund.

35.     Within **fourteen (14) days** of the Effective Date, Defendant shall provide the Settlement Administrator with an Excel spreadsheet listing the names, social security numbers, and last known addresses for the Eligible Settlement Participants during the Covered Period, as that information exists in Defendant's records. The Settlement Administrator shall attempt to confirm the accuracy of the Eligible Settlement Participants' addresses through the United States Post Office's National Change of Address database and shall mail the Notice of Settlement to any updated address obtained therefrom.

36.     After the Effective Date and within **fourteen (14) days** of Defendant receiving a vendor form or similar payment request form from the Settlement Administrator, Defendant shall deposit $240,000.00 into the interest-bearing bank account opened by the Settlement Administrator.

37. Within **thirty (30) days** of the Effective Date, the Settlement Administrator shall mail to all Eligible Settlement Participants the Notice of Settlement, Claim Form, and an enclosed, postage-paid return envelope. If any Notice of Settlement is returned as undeliverable, the Settlement Administrator will promptly attempt to locate such Eligible Settlement Participant through other reasonable and legally acceptable means, and, if located, shall promptly mail an additional Notice of Settlement to such person.

### THE CLAIMS PROCESS AND PAYMENT OF CLAIMANT'S SETTLEMENT AWARDS

38. Each Eligible Settlement Participant shall have **sixty (60) days** from the date Notice of Settlement is initially mailed to submit his or her signed and completed Claim Form, and any such submission must be postmarked, e-mailed, or facsimiled on, or before, the sixtieth (60th) day from the date of initial mailing. Representative Plaintiff and Opt-In Plaintiffs are not required to submit a Claim Form to receive their Settlement Award checks or any other payment under this Agreement.

39. Within **seventy-five (75) days** from the date Notice of Settlement is initially mailed, the Settlement Administrator shall mail to Claimants their Settlement Awards. If possible, the Settlement Administrator will issue each Claimant one single check representing the total amount of his or her Settlement Award by combining the wage and non-wage portions of his or her Settlement Award.

40. The Settlement Administrator will provide the Parties' Counsel with a list of all of the Claimants and their Settlement Awards no later than **seven (7) days** after the Settlement Awards are mailed to Claimants under Paragraph 39 of this Agreement.

### GLOBAL SETTLEMENT FUND AND TAXES

41.     The Global Settlement Fund will be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.,* and shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

42.     The Settlement Administrator shall serve as Trustee of the Global Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Global Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Global Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Global Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

43.     The Parties recognize the wage and non-wage awards to the Claimants will be subject to applicable tax withholding and reporting and employer payroll taxes. After the 90-day period for Claimants to claim their Settlement Awards has passed (as discussed in Paragraph 49 below), the Settlement Administrator shall calculate based on the claimed Settlement Awards the employer's share of payroll taxes related to the claimed Settlement Award payments treated as wage income and shall send that calculation to Defendant. If that calculation shows that the $240,000 deposited by Defendant into the Global Settlement Fund does not cover the employer's share of payroll taxes, Defendant will, as directed by the Settlement Administrator, deposit into the interest-bearing bank account opened by the Settlement Administrator a payment separate from

the Global Settlement Fund to pay the employer's share of payroll taxes related to claimed Settlement Award payments treated as wage income.

44.     All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses") shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Paragraph.

45.     The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes, as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

## **CALCULATION OF SETTLEMENT AWARDS**

46.     Settlement Awards shall be an amount proportional to the total calculated alleged damages for a three-year statute of limitations adding approximately an hour to the Eligible Settlement Participant's recorded work hours each two-week pay period. Each Eligible Settlement Participant shall receive a minimum payment of $10.00 if his or her calculated proportional share is less than that amount.

### TAX TREATMENT OF THE SETTLEMENT AWARDS

47.     For tax purposes, the Parties agree Settlement Awards will be: (a) 50 percent taxable, wage income paid under IRS Form W-2 and subject to ordinary payroll withholdings under federal and state law; and (b) 50 percent taxable, non-wage income paid under IRS Form 1099. Defendant will make all required employer contributions with respect to any portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund except as provided in Paragraph 43.

### REMAINDER OF THE GLOBAL SETTLEMENT FUND

48.     Any funds from the Global Settlement Fund that are not distributed under the terms of this Agreement shall not be redistributed among the Claimants, but shall belong to Defendant, and this Agreement shall remain binding on all of the Claimants.

49.     All Settlement Award checks that are not negotiated by a Claimant within **ninety (90) days** of the date of issuance or reissuance, as noted on the Settlement Award checks mailed by the Settlement Administrator to the Claimants, shall be null and void; the associated funds shall not be redistributed among the Claimants, any such funds shall belong to Defendant, and this Agreement shall remain binding on all of the Claimants. A reminder postcard will be mailed to all

Claimants who have not cashed their checks no less than **thirty (30) days** before the expiration of the checks.

50.     Within **one hundred (100) days** of the date that the last issued or reissued Settlement Award check is mailed, the Settlement Administrator shall deposit any remaining funds from the Global Settlement Fund that are not distributed under the terms of this Agreement into an account designated by Defendant.

## RELEASE OF CLAIMS BY THE REPRESENTATIVE PLAINTIFFS AND OPT-IN PLAINTIFFS

51.     In consideration for their Settlement Awards, each Claimant, on behalf of themselves and their respective heirs and assigns, forever and fully release the Released Parties from the Released Claims.

52.     In consideration of their eligibility for their Service Awards, the Representative Plaintiff and Opt-In Plaintiffs (Evelyn Cleveland, Kewonna Roberts, Rachel Lawson, Meghann Tinker, Bambi Sanborn, Tiffany Malazia, Swantosha Spaulding, Kimberly Mosley, and Julie Henderson), on behalf of themselves and their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest and assigns, each hereby knowingly and voluntarily forever releases and discharges the Released Parties from any and all claims, obligations, causes of action, actions, losses, expenses, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising prior to the date that the Court enters the Approval Order, including but not limited to those claims which: (a) were pled in the Action at any time; and/or (b) could have been pled in the Action, including all, but not limited to, claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure to

pay any type of minimum wages, (iii) alleged failure to pay any type of otherwise earned wages (including straight time wages, bonuses, commissions, incentive payments, etc.), (iv) any other alleged federal wage-and-hour violation, (v) any other alleged state wage-and-hour violation; (vi) alleged discrimination, retaliation, harassment, or wrongful discharge, including, without limitation, claims under the Sarbanes-Oxley Act or the False Claims Act ("FCA"), as well as claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); the Age Discrimination in Employment Act ("ADEA"); the Worker Adjustment and Retraining Notification Act ("WARN"); the Fair Credit Reporting Act ("FCRA"); the Family and Medical Leave Act ("FMLA"); the Equal Pay Act; the Genetic Information Nondiscrimination Act ("GINA"); and any Ohio counterparts (vii) any right to reinstatement of employment with Defendant and any duty or obligation of Defendant to consider Representative Plaintiffs for future employment, and (viii) any statutory, constitutional, regulatory, contractual or common law employment-related claims for wages, damages, restitution, equitable relief, or litigation costs; and (c) this release includes any and all of the following based on any of the matters released by the foregoing: penalties, liquidated damages, punitive damages, attorneys' fees and expenses, litigation costs, restitution, and equitable relief ("Representative Plaintiff's Released Claims"). For the avoidance of doubt, this is a complete and general release of all possible claims to the maximum extent allowed under the law. Representative Plaintiff's Released claims do not include any workers' compensation claims, claims for unemployment benefits or claims that cannot be released by law.

53. Further, in consideration for the payment of their attorneys' fees and costs, each Claimant, on behalf of themselves and her respective heirs and assigns, hereby releases all claims,

causes of action, demands, damages, costs, rights, and liabilities of every nature and description for attorneys' fees, costs, and expenses against the Released Parties arising from or related to the Action, including in relation to any inquiry, research and settlement discussions they conducted and the Complaint.

## ATTORNEYS' FEES AND COSTS

54.    Class Counsel will request payment of their fees for services in the amount of $80,000 and litigation expenses not to exceed $2,664.50. Any attorneys' fees and litigation expenses approved by the Court will be paid from the Global Settlement Fund. This Settlement is conditioned upon the Court's approval of Class Counsel's request for fees and litigation expenses. The Settlement Administrator will wire Class Counsel's Court-approved attorneys' fees and litigation expenses **twenty-one (21) days** after the Effective Date.

55.    The Parties agree that Plaintiffs' share of the mediator's bill in the amount of $5,741.75 shall be paid out of the Global Settlement Fund. The Settlement Administrator will mail the payment to Michael N. Ungar at Ulmer & Berne LLP, PO Box 74529, Cleveland, Ohio 44194-4529 **twenty-one (21) days** after the Effective Date.

## SERVICE AWARDS

56.    Class Counsel will seek an Order from the Court approving a Service Award for Representative Plaintiff in the amount of $5,000, as well as Service Awards for Opt-In Plaintiffs in the amount of $500.  Defendant will not contest this request. The Service Awards approved by the Court will be paid from the Global Settlement Fund. For tax purposes, the Parties agree the Service Award will be taxable, non-wage income paid under IRS Form 1099. Representative Plaintiff and Opt-In Plaintiffs agree to pay all taxes, if any, which may be deemed owing on any

Service Award payments under this Settlement. The Settlement Administrator will mail the Service Awards **twenty-one (21) days** after the Effective Date.

## NOTICES

57.     All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses:

**Class Counsel:**
Matthew J.P. Coffman
Adam C. Gedling
Kelsie N. Hendren
mcoffman@mcoffmanlegal.com
COFFMAN LEGAL, LLC
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: 614.949.1181
Fax: 614.386.9964

**Counsel for Defendant:**
Carolyn A. Davis
Jonathan N. Olivito
cdavis@taftlaw.com
jolivito@taftlaw.com
Taft Stettinius & Hollister, LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone: (614) 221-2838
Facsimile: (614) 221-2007

## CONSTRUCTION, INTERPRETATION AND MODIFICATION

58.     This Agreement constitutes the entire agreement between the Parties with respect to the subject matter included in this Agreement and it shall supersede all prior and contemporaneous negotiations between the parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for, or against, any party, regardless of

who drafted, or who was principally responsible for drafting, this Agreement, or any specific term or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim any ambiguity in this Agreement should be construed against another.

59.     If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

60.     Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. The Parties agree this Agreement is to be construed according to its terms and it may not be varied, or contradicted, by extrinsic evidence.

61.     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Ohio, and shall be subject to the continuing jurisdiction of the Court. The Parties agree that if either Party breaches any of the terms and conditions of this Agreement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred in enforcing the terms and conditions contained herein.

62.     If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable the remaining portions of this Agreement will remain in full force and effect to the extent the effect of this Agreement, as well as the obligations of the Parties, remains materially the same.

63.     This Agreement may not be modified or amended, except in writing, signed by the Parties or their counsel, and as approved by the Court. This Agreement, any amendments or

modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

64.     This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit the Released Parties; likewise, this Agreement shall be binding upon the Representative Plaintiff's and the Claimants' spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

### CONTINUING JURISDICTION

65.     The Parties agree to move for the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

| DATED: | DEFENDANT |
|---|---|
| | By: _____ |
| | Its: _President osup_ |

| DATE: Jul 28, 2021 | REPRESENTATIVE PLAINTIFF ALICE DANIELS |
|---|---|

| DATE: | OPT-IN PLAINTIFF KEWONNA ROBERTS |
|---|---|

| DATE: | OPT-IN PLAINTIFF EVELYN CLEVELAND |
|---|---|

| DATE: | OPT-IN PLAINTIFF RACHEL LAWSON |
|---|---|

| DATE: | REPRESENTATIVE PLAINTIFF ALICE DANIELS |
|---|---|
| | _____ |

| DATE: 07.28.2021 | OPT-IN PLAINTIFF KEWONNA ROBERTS |
|---|---|
| | *kewonna roberts* |
| | _____ |

| DATE: | OPT-IN PLAINTIFF EVELYN CLEVELAND |
|---|---|
| | _____ |

| DATE: | OPT-IN PLAINTIFF RACHEL LAWSON |
|---|---|

| DATE: | REPRESENTATIVE PLAINTIFF ALICE DANIELS |
|---|---|
| | _____ |

| DATE: | OPT-IN PLAINTIFF KEWONNA ROBERTS |
|---|---|
| | _____ |

| DATE: 07/30/21 | OPT-IN PLAINTIFF EVELYN CLEVELAND |
|---|---|
| | _Evelyn Cleveland_ |
| | _____ |

| DATE: | OPT-IN PLAINTIFF RACHEL LAWSON |
|---|---|

|  | *Rachel Laws* _____ |
|  |  |

| DATE: | OPT-IN PLAINTIFF MEGHANN TINKER<br><br>_____ |
|---|---|

| DATE: | OPT-IN PLAINTIFF BAMBI SANBORN<br><br>_____ |
|---|---|

| DATE: | OPT-IN PLAINTIFF TIFFANY MALIZIA<br><br>_____ |
|---|---|

| DATE: | OPT-IN PLAINTIFF SWANTOSHA SPAULDING |
|---|---|

|   | _____ |
|---|--------------------------|

| DATE: 07/28/2021 | OPT-IN PLAINTIFF MEGHANN TINKER <br><br> _JnR_ <br> _____ |
|------------------|----------------------------------|

| DATE: | OPT-IN PLAINTIFF BAMBI SANBORN <br><br> _____ |
|-------|-----------------------------------|

| DATE: | OPT-IN PLAINTIFF TIFFANY MALIZIA <br><br> _____ |
|-------|-----------------------------------|

| DATE: | OPT-IN PLAINTIFF SWANTOSHA SPAULDING |
|-------|--------------------------------------|

| | |
|---|---|
| | _____ |

| | |
|---|---|
| DATE: | OPT-IN PLAINTIFF MEGHANN TINKER<br><br>_____ |

| | |
|---|---|
| DATE: 07/28/2021 | OPT-IN PLAINTIFF BAMBI SANBORN<br><br>_~Bambi Sanborn~_<br>_____ |

| | |
|---|---|
| DATE: | OPT-IN PLAINTIFF TIFFANY MALIZIA<br><br>_____ |

| | |
|---|---|
| DATE: | OPT-IN PLAINTIFF SWANTOSHA SPAULDING |

| | |
|---|---|
| | _____ |

| | |
|---|---|
| DATE: | OPT-IN PLAINTIFF MEGHANN TINKER<br><br>_____ |

| | |
|---|---|
| DATE: | OPT-IN PLAINTIFF BAMBI SANBORN<br><br>_____ |

| | |
|---|---|
| DATE: Jul 28, 2021 | OPT-IN PLAINTIFF TIFFANY MALIZIA<br><br>*[signature]*<br>_____ |

| | |
|---|---|
| DATE: | OPT-IN PLAINTIFF SWANTOSHA SPAULDING |

|  | *Swantosha Spaulding* <br> _____ |
|---|---|
|  |  |

| DATE: | OPT-IN PLAINTIFF KIMBERLY MOSLEY <br><br> _____ |
|---|---|

| DATE: | OPT-IN PLAINTIFF JULIE HENDERSON <br><br> _____ |
|---|---|

|  |  |
|--|--|
|  | _____ |

| DATE: 07/29/21 | OPT-IN PLAINTIFF KIMBERLY MOSLEY |
|--|--|
|  | _K. Mal_ _____ |

| DATE: | OPT-IN PLAINTIFF JULIE HENDERSON |
|--|--|
|  | _____ |

|  |  |
|---|---|
|  | _____ |

| DATE: | OPT-IN PLAINTIFF KIMBERLY MOSLEY |
|---|---|
|  | _____ |

| DATE: 07/30/2021 | OPT-IN PLAINTIFF JULIE HENDERSON |
|---|---|
|  | _____ |

# EXHIBIT A

<u>**CLAIM FORM AND RELEASE**</u>

*THIS FORM MUST BE POST-MARKED OR OTHERWISE SUBMITTED TO THE SETTLEMENT CLAIMS ADMINISTRATOR NO LATER THAN <mark>[DATE]</mark>.*

**I.    CONSENT TO JOIN**

I understand that this lawsuit is being brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, et seq. ("FLSA") and related state laws.  Pursuant to 29 U.S.C. § 216(b), I hereby consent and agree to join the case of *Daniels v. Ohio State University Physicians, Inc., S.D. OH Case No. 2:20-cv-5859.* I consent and agree to be bound by any action by the Court. I further agree that the Representative Plaintiff in the Action shall act as my agent and make all decisions on my behalf concerning the Action, including the settlement thereof.

I hereby designate the law firm of Coffman Legal, LLC to represent me in this action.

**II.    RELEASE**

My signature below constitutes a full and complete release and discharge of Ohio State University Physicians, Inc. ("Defendant" or "OSUP") and its present and former officers, directors, shareholders, employees, representatives, insurers, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities and any other persons acting by, through, under, or in concert with any of these persons or entities, and their successors (the "Releasees") by me and by my respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, from any and all wage and hour claims, demands, rights, liabilities, causes of action, expenses, and losses of every nature and description, that I have, had, or might have had against OSUP based on any act or omission that occurred at any time up to and including June 29, 2021, related to any of the facts or claims alleged in this Action or that could have been alleged based on the facts at issue in the Action and including retaliation for bringing, opting into, or otherwise participating in the Action, even if presently unknown and/or un-asserted, including but not limited to:  The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et. seq.*; the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, *et seq.*; the Ohio Prompt Pay Act, O.R.C. § 4113.15; Article II, Section 34a of the Ohio Constitution; the wage and hour laws and regulations of any state in which  I worked for OSUP or  resided in while employed by OSUP; and  any claims that could be asserted against the Releasees under state, federal, local and/or common law, relating to the failure to pay wages, back wages, overtime, minimum wages, interest on such claims, and attorneys' fees, expenses and costs related to such claims in exchange for my proportionate share of the settlement.

_____          _____
Full Legal Name (print)                              Signature


_____          _____
Maiden or other names worked under          Street Address


_____          _____
E-mail Address                                          City, State and Zip Code

_____
Telephone Number

# EXHIBIT B

**NOTICE OF SETTLEMENT OF COLLECTIVE ACTION LAWSUIT**

*Daniels v. Ohio State University Physicians, Inc.*, S.D. OH Case No. 2:20-cv-5859

**You are receiving this notice because you are a potential member of a collective action lawsuit and eligible to participate in the settlement of that lawsuit. A federal district court has approved this notice. This is not a solicitation from a lawyer.**

**This notice is being sent to "all former and current individuals employed by OSU Physicians, Inc. as hourly, non-exempt Medical Assistants ("MAs"), Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs") or Patient Services Associates ("PSAs") in the Internal Medicine Float Pool or the Infectious Disease, Endocrinology, Medical Specialty, Dermatology, Rheumatology/Nephrology, or General Internal Medicine Clinics operated by OSU Physicians, Inc. and scheduled to work 40 or more hours in any workweek between November 11, 2017 and November 11, 2020." You are receiving this Notice because Ohio State University Physicians, Inc.'s records indicate that you fit this definition.**

Representative Plaintiff filed this lawsuit against Ohio State University Physicians, Inc. ("OSUP") on November 11, 2020. In the lawsuit, Representative Plaintiff alleged that she was not paid for pre-shift work and had unpaid meal breaks that were either not taken, shortened, or interrupted with job duties. In response to the lawsuit, OSUP denies all claims and allegations asserted and that it engaged in any wrongdoing. The Parties have entered into this settlement solely with the intention of avoiding further litigation.

**Your legal rights may be affected, and you have a choice to make now:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CLAIM FORM** | By returning a properly completed Claim Form and Release you agree to participate in the settlement and will receive a settlement payment. To participate in the settlement, you must return a properly completed Claim Form and Release by [60 days from date of mailing]. If you participate in the settlement, you agree to be bound by the terms of the settlement, including the release of your wage and hour claims. |
| **DO NOT RETURN THE CLAIM FORM** | If you do not wish to participate in the settlement, you should not return the Claim Form and Release. If you do not timely return a properly completed Claim Form and Release by [60 days from date of mailing], you will not receive a settlement payment. |

BASIC INFORMATION

## 1. Why did I get this notice?

You have received this notice because OSUP's records show that you fit the following definition: all former and current individuals employed by OSU Physicians, Inc. as hourly, non-exempt Medical Assistants ("MAs"), Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs") or Patient Services Associates ("PSAs") in the Internal Medicine Float Pool or the Infectious Disease, Endocrinology, Medical Specialty, Dermatology, Rheumatology/Nephrology, or General Internal Medicine Clinics operated by OSU Physicians, Inc. and scheduled to work 40 or more hours in any workweek between November 11, 2017 and November 11, 2020.

The Court ordered that you be sent this notice because you have a right to know about the settlement of this collective action lawsuit. This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available to you.

The Court overseeing the lawsuit is the United States District Court for the Southern District of Ohio Eastern Division. The lawsuit is known as *Daniels v. Ohio State University Physicians, Inc., S.D. OH Case No. 2:20-cv-5859*. The individual who filed the lawsuit is called the "Representative Plaintiff." Ohio State University Physicians, Inc. is referred to as the "Defendant" or "OSUP."

## 2. What is the lawsuit about?

This lawsuit is about allegations Representative Plaintiff made that she and other healthcare employees were not compensated for all time spent working, including pre-shift work and unpaid meal breaks that were either not taken, shortened, or interrupted with job duties. OSUP has denied these allegations and continues to believe it has, at all times, properly paid its employees.

## 3. What is a collective action?

In a "Collective Action," one or more people called a "Representative Plaintiff" file a lawsuit on behalf of himself or herself and other people who have similar claims. To be part of the case, those other people are required to affirmatively join the collective action. You can join this collective action and participate in the settlement by signing and returning the enclosed Claim Form and Release. Settlement checks are estimated to be mailed in this case approximately 15 days after the end of the claim period.

## 4. Why is there a settlement?

The Court did not decide in favor of the Representative Plaintiff or Defendant and neither side prevailed. The Parties agreed to this settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

## 5. How do I know if I will be included in the settlement?

You will receive a settlement check if you properly complete, sign, and return the enclosed Claim Form and Release by [date 60 days from mailing of Notice].

## 7.  What does the settlement provide?

Defendant has agreed to pay at total of $240,000.00.  This amount includes Representative Plaintiff's attorneys' fees and costs, service awards for Representative Plaintiff and certain Opt-In Plaintiffs, the costs of administration of $6,924, and settlement payments to current and former employees that participate in the settlement.

## 8.  How will my payment be calculated?

Settlement payments to those who participate in the settlement will be calculated based on a formula that has been approved by the Court as fair and reasonable. Each Eligible Settlement Participant's Settlement Award reflects a *pro rata* share of the Net Settlement Fund based on the number of workweeks and hours worked by the Eligible Settlement Participant during the Covered Period. Each Eligible Settlement Participant will be receiving the same number of additional alleged unrecorded hours of work added to their recorded hours worked. Settlement Awards will be a minimum of $10.

Based on this formula, you are estimated to receive approximately $_____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive a W-2; and half of which will be reported on an IRS Form 1099.

## 9.  How can I get my payment?

To get your payment, you must fully complete the enclosed Claim Form and Release and mail it to the Claims Administrator in the enclosed envelope postmarked no later than [60 days from date of mailing].  You may also e-mail or fax the Claim Form and Release to the Settlement Claims Administrator, so that it is received no later than [60 days from date of mailing].  The Settlement Claims Administrator's complete contact information is:

[Claims Administrator to insert]

## 10.  When will I get my payment?

You will be sent a check on or around [insert check mailing date].  Please be patient.

**Checks will become null and void after 90 days of their issuance.**

## 11.  What am I giving up if I sign the Claim Form and Release to get a payment?

By returning the Claim Form and Release, you cannot sue, continue to sue, or be a party in any other lawsuit against Defendant relating to the claims at issue in this case during the time period covered by the Settlement.  It also means that all of the Court's orders will apply to you and legally bind you.

**12.  Do I have a lawyer in this case?**

Upon signing and returning the Claim Form and Release, you will be consenting to join this case, you will designate the law firm of Coffman Legal, LLC to represent you. These lawyers are called "Named Plaintiff's Counsel." You can find more information about Named Plaintiff's Counsel at https://www.mcoffmanlegal.com/.

**13.  How will the lawyers be paid?**

The Court has approved payment of $80,000 for attorneys' fees, plus $2,664.50 in attorneys' actual out-of-pocket costs.

**14.  How do I get more information?**

If you have other questions about the settlement, you can contact Named Plaintiff's Counsel at the telephone number or email below.

Matthew J.P. Coffman
Adam C. Gedling
Kelsie N. Hendren
**Coffman Legal, LLC**
mcoffmanlegal.com
(614) 949-1181


DATED: _____, 2021

*Daniels v. Ohio State University Physicians, Inc.*, S.D. OH Case No. 2:20-cv-5859

Claims Administrator

[NAME]
[ADDRESS]
[ADDRESS]
[PHONE NUMBER]

## CLAIM FORM AND RELEASE INSTRUCTIONS

**In order to receive any portion of the settlement funds described in the Notice of Settlement ("Notice"), you must sign, date, and return this Claim Form and Release to the Settlement Claims Administrator postmarked by _____ 2021**

### CHANGES OF ADDRESS

It is **your responsibility** to keep a current address on file with the Settlement Claims Administrator.  Please make sure to notify the Settlement Claims Administrator of any change of address.

*Daniels v. Ohio State University Physicians, Inc.*, S.D. OH Case No. 2:20-cv-5859

Settlement Claims Administrator
[Name]
[Address]
[Address]
[Phone]

***[DATE]**.*